UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Phillip N. Jones,                                         Civil No. 06-3838 (PJS/FLN)

    Plaintiff,

    v.                                                    **ORDER AND REPORT AND RECOMMENDATION**

Sheriff Don Gudmundson,
Dakota County Jail,

    Defendants.

_____

Philip N. Jones, *pro se*.
Andrea White, Assistant Dakota County Attorney, for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' motion for summary judgment [#10] and on Plaintiff's motion to appoint counsel [#20]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendant's motion be granted and orders that Plaintiff's motion be denied.

**I.    FINDINGS OF FACT**

Plaintiff was incarcerated at the Dakota County Jail from September 5, 2004 until July 20, 2005 while awaiting trial on a First Degree Criminal Sexual Conduct Charge. (Anderson Aff. at 2.) A jury found Plaintiff guilty on July 8, 2005 and he was transferred on July 20, 2005 to another facility.

From December 20, 2004 until July 18, 2005, while Plaintiff was incarcerated at the Dakota County Jail, he worked as a trustee in the jail library . (White Aff. Ex. A (Jones Dep.) at 15.) He

also participated in various jail programs including one called "Purpose of a Life" which was facilitated by a woman named Jami Losh. (Jones Dep. at 17.) Ms. Losh was a correctional deputy with the county. (Gudmundson Aff.) Correctional deputies are unlicensed deputies who work with inmates. (*Id*.) In January 2005, the Plaintiff began a sexual relationship with Ms. Losh that continued until the Plaintiff left the facility in July. (Jones Dep. at 19.) The encounters took place in the library and the photocopy room on the weekends that Ms. Losh was working. (*Id*.) The Plaintiff testified that the encounters took place in those two rooms because he knew there were no cameras in them. (Jones Dep. at 20.) The Plaintiff denied that he received physical injuries from the encounters. (*Id*.) He also denied that there were any witnesses. (*Id*.) The Plaintiff and Ms. Losh communicated by writing letters to one another. (Jones Dep. at 20.)

On June 14, 2005, a correctional deputy found a letter in the Plaintiff's cell written by him to Ms. Losh which suggested the two individuals had been involved in a romantic relationship. (Wayne Aff.; Gudmundson Aff. at 1.) Bradley Wayne, a deputy with the Dakota County Sheriff's office, conducted an investigation of the matter. (Wayne Aff.) During the investigation, Mr. Wayne interviewed the Plaintiff and he admitted to having a sexual relationship with Ms. Losh. (Jones Dep. at 26-27.) The Plaintiff did not report the relationship to jail authorities until his interview with Mr. Wayne. (Jones Dep. at 27.) Ms. Losh was placed on administrative leave while the criminal investigation continued. (Gudmundson Aff. at 1.) After the investigation ended, the Dakota County Attorney's Office charged Jami Losh with the crime of Misconduct of a Public Official under Minn. Stat. § 609.43(2) and Minn Stat. § 609.101. (Gudmunson Aff. at 1; Wayne Aff.) Ms. Losh pleaded guilty to the charge on July 13, 2005 and she resigned from her duties with Dakota County on July 18, 2005. (Gudmundson Aff. at 1-2.)

When he was first booked at the jail, the Plaintiff received an Inmate Handbook outlining the procedure for filing a grievance about conditions in the jail. (Anderson Aff. Ex. 1.) The Plaintiff admitted that he never filled out an inmate grievance form concerning this matter but he was given the opportunity to do so. (Jones Dep. at 35; Anderson Aff. Ex. F.) It appears that the Plaintiff did not understand that the form he was given was, in fact, the form used to make a complaint. (*Id*.) Instead of making his complaint in the form titled "Inmate Grievance Form," he requested that Mr. Gudmundson send him a complaint form. (Anderson Aff. Ex. F.)

Dakota County Sheriff Don Gudmundson attested that he had no knowledge of the relationship between Plaintiff and Ms. Losh prior to June 14, 2005 when the letter was discovered. (Gudmundson Aff.) The Plaintiff stated he believed that Sheriff Gudmundson did not learn of the relationship until after Plaintiff spoke with Captain Wayne. (Jones Dep. at 29-30.)

## II.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party." *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

Plaintiff contends that summary judgment is premature because discovery was interrupted and has not been completed. He contends that fact issues cannot be fully analyzed and therefore a Rule 12 motion to dismiss standard should apply. According to the pretrial schedule, all dispositive motions were to be filed and heard by December 1, 2007. The Defendants adhered to the schedule and the Court finds no reason to analyze their motion under a motion to dismiss standard.

### III.   LEGAL ANALYSIS

**A. Plaintiff's Motion to Appoint Counsel [#20] is Denied.**

Because the Court recommends granting Defendants' motion for summary judgment, Pliantiff's Motion to Appoint Counsel is denied as moot.

**B. Plaintiff's Claims are Precluded by the Prison Litigation Reform Act (PLRA).**

Assuming but without deciding that the Plaintiff exhausted his administrative remedies, the Court concludes that Plaintiff's claims are precluded by the PLRA. The PLRA provides that "[n]o federal action may be brought by a prisoner confined in jail, prison or other correctional facility for mental or emotional injury suffered while in custody, without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In this case, the Plaintiff denied receiving any physical injuries as a result of the relationship; he denied that weapons or force were used. (Jones Dep. at 20.)

**C. The Complaint Fails to State a Claim Against Sheriff Gudmundson**.

**1. Sheriff Gudmundson cannot be liable on the basis of respondeat superior or under a failure to protect theory.**

Plaintiff's complaint alleges that Sheriff Gudmundson is liable for the acts of one of the Dakota County correctional deputies, Jamie Losh. "[T]he doctrine of *respondeat superior* is not a basis for rendering municipalities or a sheriff or supervisory officer liable under § 1983 for the constitutional torts of their employees." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 663 (1978); *Myers v. Morris*, 810 F.2d 1437, 1463 -1464 (8th Cir. 1987) *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478, 483 (U.S. 1991). It is only when the government's policy or custom as executed can fairly be said to cause the tort that the government entity or sheriff will be liable. *Monell*, 810 F.2d at 694-95. In this case, Ms. Losh was certainly not executing Dakota County policy or custom in engaging in a romantic relationship with the Plaintiff. She was, in fact, criminally charged by the county when it learned of the relationship.

A sheriff will also not be liable for failure to prevent misconduct on the part of a deputy absent a showing of direct responsibility for the improper conduct. *In re Scott County Master*

*Docket*, 672 F.Supp. 1152, 1179 (D. Minn. 1987) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)). Here, Plaintiff has not presented any evidence that Sheriff Gudmundson's conduct was directly responsible for the relationship.

**2. A claim of failure to protect fails.**

Even though it is unclear from the complaint whether or not the Plaintiff was alleging a failure to protect claim, the Defendants have shown that such a claim would also fail.

A claim for failure to protect by a pretrial detainee is analyzed under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment but the same deliberate indifference standard applies in both cases. *Crow v. Montgomery*, 403 F.3d 598, 601-02 (8th Cir. 2005). In order to prevail on a claim for failure to protect, a plaintiff must show that: (1) his conditions posed a substantial risk of serious harm; and (2) the officials were aware of the risk and deliberately disregarded it or were deliberately indifferent to Plaintiff's risk to health or safety. *Id*. at 602. Assuming but without deciding that the Plaintiff's romantic relationship with Ms. Losh posed a substantial risk of serious harm to him, there is no evidence suggesting that Sheriff Gudmundson or any other jail employees knew about the relationship until the letter was discovered in Plaintiff's cell on June 14, 2005. Once the letter was discovered, an investigation was promptly begun, criminal charges were filed, Ms. Losh pleaded guilty to those charges and resigned from her position on July 18, 2005. The actions taken by Sheriff Gudmundson and Dakota County demonstrate that they did not deliberately disregard the relationship, but rather took swift action to end it and to impose proper punishment on Ms. Losh.

**D. Defendant Gudmundson is Entitled to Qualified Immunity.**

A government official is entitled to qualified immunity "from liability insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In making this determination, a court must decide: (1) whether the facts alleged show the officer's conduct violated a constitutional right; and (2) if such a finding is made, whether the constitutional right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  In Part B, *supra*, the Court determined that Sheriff Gudmundson's conduct did not violate Plaintiff's Fourteenth Amendment rights because there is no evidence that Gudmundson deliberately disregarded the alleged threat to Plaintiff's safety.  Once Sheriff Gudmundson learned of the relationship, an investigation was conducted and criminal charges were brought against Ms. Losh.  Because Gudmundson's conduct did not violate Plaintiff's constitutional rights, Gudmundson is entitled to qualified immunity.

### IV.   ORDER AND RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Appoint Counsel [#20] is **DENIED**.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.


DATED: February 14, 2008                       s/ *Franklin L. Noel*
                                               FRANKLIN L. NOEL
                                               United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 5, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.